UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:19-cv-09216-SB-AS | Date: | 2/19/2021 |
|---|---|---|---|

| Title: | *Open Text, Inc. v. Northwell Health, Inc. et al* |
|---|---|

| Present: The Honorable | STANLEY BLUMENFELD, JR., U.S. District Judge |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM (DKT. NO. 91)**

Before the Court is Plaintiff and Counter Defendant Open Text, Inc.'s motion to dismiss Defendant and Counterclaimant Northwell Health, Inc.'s counterclaim. Dkt. No. 91-1 (MTD). The motion was fully briefed. Dkt. Nos. 93 (Opp.), 94 (Reply). The Court issued a tentative opinion, and the parties agreed to submit on the tentative and not argue the motion at the scheduled hearing.

I. **BACKGROUND**

Northwell Health, Inc. is a large healthcare provider in the State of New York. Dkt. No. 83 (Counterclaim) ¶ 8. Starting in 2014, Northwell began licensing a digital investigation and discovery tool from Guidance Software. *Id.* ¶¶ 12-42. Northwell worked with Marcum Technology LLC, a software reseller, to receive quotes and place orders for the software. *Id.* ¶ 11, 19-22. With Marcum's assistance, Northwell purchased licenses for the software three times, in 2014, 2015, and 2016. *Id.* ¶¶ 21, 30, 33. Each license covered a certain number of

"nodes," a term for computers or servers that can be connected to and investigated with the software. *See id.* ¶¶ 21, 30, 33, 66, 69.

After each purchase, Northwell was sent hyperlinks to install the software. *Id.* ¶ 35. The installation page included a hyperlink that was intended to direct users to the terms and conditions of the software. *Id.* ¶ 36. Northwell alleges that the hyperlink was broken. *Id.* ¶ 37. There was also a landing page with 37 different hyperlinks to various license agreements and other documents, but those hyperlinks did not indicate which terms and conditions applied to the relevant software. *Id.* ¶ 39. Northwell did not otherwise receive the governing licensing agreement. *Id.* ¶ 42.

In 2017, Open Text, Inc. acquired Guidance and its portfolio of software license agreements. *Id.* ¶ 43. In 2018, Open Text conducted a "node audit" of Northwell to identify the number of nodes in use and "claimed that a node was defined as any computer on the network that could be connected and investigated using the Software." *Id.* ¶ 45. By contrast, Northwell claims that it reasonably believed "the licenses were intended to cover the number of machines on which Northwell actually used the Guidance software, not the number of machines on Northwell's network as a whole." *Id.* ¶ 17.

Open Text sued Northwell for exceeding the number of "nodes" provided for under its license, asserting claims for breach of contract, breach of implied covenant of good faith and fair dealing, and violations of section 17200 of California's Unfair Competition Law (UCL). Dkt. No. 1. With court approval, Northwell filed an amended counterclaim, raising a single cause of action under the UCL and seeking injunctive relief.[1] Dkt. No. 83. Open Text then filed this motion to dismiss the counterclaim. Dkt. No. 91-1.

---

[1] Northwell seeks an injunction: (1) "preventing Open Text from enforcing any terms and conditions . . . provided solely through (a) the link [Northwell was provided], (b) any nonfunctional hyperlink, (c) the Landing Page, (d) any website page where the user is required to double-link to the applicable terms and conditions, or (e) any hyperlink which is not clear on its face is part of the terms and conditions for licensing the Software"; and (2) "prohibiting Open Text from asserting its definition of 'node' as to any customer who did not agree to that term through provable and proper consent of that term, as Open Text's definition is contrary to the understanding of a reasonable consumer." *Id.* at 13.

## II.     DISCUSSION

Open Text argues that Northwell's counterclaim should be dismissed for lack of standing under the UCL.[2]

Section 17200 prohibits any "business act or practice" that is "unlawful, unfair, or fraudulent." Cal. Bus. & Prof. Code § 17200. The UCL protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 110 (1972). "Thus, a UCL claim fails if it lacks any connection to the protection of fair competition or the general public." *Sacramento E.D.M., Inc. v. Hynes Aviation Indus.*, Inc., 965 F. Supp. 2d 1141, 1154 (E.D. Cal. 2013).

In *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 135 (2007), the court instructed that "[w]here a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." There, the court affirmed dismissal of a UCL claim because the alleged victims were "neither competitors nor powerless, unwary consumers," but rather were "corporate customers . . . ., 'each of which presumably has the resources to seek damages or other relief.'" *Id.*

Applying *Linear Tech.*, courts have recognized that it "essentially withdraws UCL standing from non-competitor corporate plaintiffs seeking to bring a UCL action based on contracts" not involving the public or individual consumers. *IV Sols., Inc. v. Connecticut Gen. Life Ins. Co.*, No. CV 13-9026-GW(AJWX), 2015 WL 12843822, at *17 (C.D. Cal. Jan. 29, 2015). In other words, "a dispute between commercial parties over their economic relationship" does not give rise to a UCL claim. *ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 975 (C.D. Cal. 2017) (citation omitted). The line of cases so holding is substantial, *see IV Sols*, 2015 WL 12843822, at *17 n.70 (collecting cases), and continues to grow, *see, e.g., Nnydens Int'l, Inc. v. Textron Aviation, Inc.*, No. CV 18-9455-DMG (SKX), 2020 WL 7414732, at *8 (C.D. Cal. June 11, 2020) (concluding that the

---

[2] Open Text also contends that dismissal is required because Northwell seeks to apply the UCL extraterritorially and because Northwell has not sufficiently pleaded a claim under either the UCL's "unfair" or "fraudulent" prong. MTD 2-16. The Court does not reach these contentions in light of its conclusion on the threshold question of "standing."

action was a "dispute between commercial parties over their economic relationship").

Here, Northwell and Open Text are large corporate entities in a squabble over the use of software licensed under a contract. Northwell holds itself out to be "the largest healthcare provider in the State of New York" and "home to 23 hospitals and more than 700 outpatient facilities, as well as an institute of medical research, a school of medicine, urgent care centers, kidney dialysis centers, acute inpatient rehabilitation, sub-acute rehabilitation and skilled nursing facilities, a home care network, a hospice network, and other services." Counterclaim ¶ 8.[3] According to the pleadings, Open Text and Northwell are not competitors but rather have a licensor-licensee relationship.  Nor do the pleadings suggest that any individual consumers were affected by the parties' disputed transactions. The other customers allegedly impacted by a similar "scheme" (*see* Counterclaim ¶¶ 61-75) appear to be other "corporate customers" with "the resources to seek damages or other relief," *Linear Tech.*, 152 Cal.App.4th at 135. As Open Text notes, without contradiction in the pleadings, "[t]he class of customers who use the Software are . . . sophisticated customers with large internal networks . . . ." MTD 4.[4] Thus, this dispute appears centered on the economic relationship between two commercial parties and untethered to the protection of competition or the public—i.e., the sort of conflict "that the UCL does not contemplate." *Nnydens Int'l, Inc.*, 2020 WL 7414732, at *8.

None of Northwell's arguments to the contrary is persuasive. Northwell's primary contention is that its counterclaim is not "based on contracts" as required by *Linear Tech.* and as distinguished from the cases upon which Open Text relies.

---

[3] Open Text's request for judicial notice of a news article about Northwell's annual revenues is denied. Dkt. No. 91-3. Even if proper, resort to a news article to prove Northwell is a large corporate entity is plainly unnecessary. The request for judicial notice of dictionary definitions is likewise denied because the definitions relate to alternative arguments not reached in this Order.

[4] Northwell's allegations confirm the software at issue allows customers "to conduct internal investigations and control litigation productions" across a "computer network [that] may contain thousands of devices." Counterclaim ¶¶ 12-13. Indeed, the license at issue here covers a minimum of 2,001 nodes. Counterclaim ¶ 30. This sort of software would only be needed and licensed by a large, sophisticated entity with a significant number of devices on its network, and not an ordinary consumer.

Opp. 5. Northwell claims that it is alleging instead a "bait-and-switch" scheme to assert non-existing contractual rights. Opp. 5-6. This claimed distinction, however, overlooks the linchpin of the *Linear Tech.* holding. *Linear Tech.* did not turn on the presence of a traditional contract claim; indeed, if that were the case, any party could plead around it by omitting the claim. Rather, *Linear Tech.* rested its holding on the nature of the parties, not on the nature of their transaction—and certainly not on the litigation label a party may attach to it to advance its strategic objective. *See Linear Tech.*, 152 Cal. App. 4th at 135 (focusing on the nature of the alleged victims and their resources to seek recovery for harm); *see also Gallucci v. Los Angeles SMSA Ltd. P'ship*, No. E054400, 2013 WL 5536373, at *7 (Cal. Ct. App. Oct. 8, 2013) (stating that "the unfair competition law has no application in commercial disputes between two businesses" except in limited circumstances).[5]

Northwell relatedly contends that Open Text's "allegedly unfair, deceptive, and unlawful acts . . . are not limited to the parties' contractual relationship." Opp. 5-6. Northwell states the enforcement of the contract is merely "a smokescreen to threaten consumers with legal action unless they agree to pay exorbitant license fees, despite knowing that its customers never agreed to these terms" and this action is beyond the scope of the contract. *Id.* (citing *Circle Click Media LLC v. Regus Management Group LLC,* No. 3:12-CV-04000-SC, 2015 WL 6638929, at *5 (N.D. Cal. Oct. 30, 2015)).[6] But a similar argument was rejected in *In re ConocoPhillips Co.*, 2011 WL 1399783 *3 (rejecting claim that *Linear Tech.* was distinguishable because "the present 'case is not based [on] contracts,' but rather on [the defendant's] actions outside of those contracts"). The court concluded that "[p]laintiffs' relationship with defendant is defined by their contractual arrangement," and that relationship did "not involve the general public or individual consumers." *Id.* The same is true here. The legality of Open Text's actions ultimately depends on the rights and duties under the contract.

---

[5] Federal courts are "not precluded from considering unpublished state court opinions." *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997)

[6] As Open Text notes, *Circle Click* is largely inapposite. Reply 2-3. First, the plaintiffs in that case were not "uniformly sophisticated and capable of seeking relief." *Circle Click*, 2015 WL 6638929, at *5. Second, the "alleged scheme encompasse[d] actions beyond the parties' contractual relationship, including publishing deceptive advertisements . . . ." *Id.*

Finally, Northwell argues that "even if this were a 'contract-based' claim, courts regularly recognize that corporate plaintiffs may pursue UCL claims when they bear some connection to a contract of adhesion." Opp. 5. According to Northwell, this contract is "precisely the type of non-negotiated form or adhesion contracts over which courts permit corporations to pursue UCL claims." *Id.* Even accepting that New York's largest healthcare provider lacked bargaining power in a significant commercial transaction, the cases Northwell cites do not have the protection of a colossal company in mind. The protective sweep of those cases is more modest, as they involved claims related to form contracts where "the interests of individual consumers [were] implicated."[7]

In sum, the Court concludes that Northwell lacks standing to bring its UCL counterclaim. Because Northwell cannot cure this deficiency, leave to amend appears futile. Northwell contends it can amend its counterclaim to provide "additional facts regarding . . . Northwell's status as a non-profit healthcare provider who is not in the business of buying and selling software." Opp. 25. But even with such additional allegations, Northwell would remain a large, sophisticated corporate entity—and thus still could not turn to the UCL to remedy its business-to-business contractual dispute. Thus, the counterclaim is **DISMISSED WITH PREJUDICE**.

### III.   CONCLUSION

For these reasons, Open Text's motion to dismiss is **GRANTED** and Northwell's UCL counterclaim is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

---

[7] *See Free Range Content, Inc. v. Google Inc.*, No. 14-CV-02329-BLF, 2016 WL 2902332, at *17 (N.D. Cal. May 13, 2016); *see also Circle Click*, 2015 WL 6638929, at *5 (noting that "the proposed class of plaintiffs is not so uniformly sophisticated"); *Ewert v. eBay, Inc.*, No. C-07-02198 RMW, 2010 WL 4269259, at *9 (N.D. Cal. Oct. 25, 2010) (noting that "this action deals exclusively with form contracts . . . and involves individual consumers").